# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JAMES O. MURRAY,

                                Plaintiff,

                v.                                9:11-CV-225 (GLS/ATB)

BRIAN FISCHER, et al.,

                                Defendants.

JAMES O. MURRAY, Plaintiff, *pro se*
GREGORY J. RODRIGUEZ, Ass't Att'y Gen., for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

On February 28, 2011, plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that more than 40 employees of the New York State Department of Correctional and Community Services ("DOCCS") violated his federal constitutional rights during his confinement at the Southport Correctional Facility ("Southport") and Upstate Correctional Facility ("Upstate") in 2008 and 2009. (Compl., Dkt. No. 1). Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 87). This matter was referred for Report and Recommendation on July 1, 2014 by Chief U.S. District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

After being granted several extensions, plaintiff filed, on December 8, 2014, a response to defendants' summary judgment motion and a cross motion to allow

plaintiff to voluntarily dismiss, without prejudice, all of his remaining claims[1] except for excessive force and failure-to-protect claims relating to two incidents in 2009. (Dkt. No. 102). On December 9, 2014, defendants filed a reply, in which they objected to the dismissal of any of plaintiff's claims without prejudice and renewed the defendants' request that all of plaintiff's claims be dismissed, pursuant to Fed. R. Civ. P. 56, with prejudice. (Dkt. No. 103).

For the reasons set forth below, this court recommends denial of plaintiff's motion to voluntarily dismiss certain claims without prejudice. The court further recommends that defendants' motion for summary judgment be denied with respect to plaintiff's excessive force and failure-to-protect claims. However, plaintiff's other remaining claims should be dismissed with prejudice, based on his failure to exhaust administrative remedies.

## BACKGROUND

The claims in plaintiff's amended complaint that survived *sua sponte* dismissal by Chief Judge Sharpe were (a) a claim that defendants Napoli and Sheahan retaliated against plaintiff for grievances and lawsuits concerning alleged abuses at Southport, by, *inter alia*, causing plaintiff's transfer to Upstate in February 2008; (b) a claim that defendant White, a nurse at Upstate, retaliated against plaintiff for complaints about the medical staff at Southport, by harassing and threatening him on or about February

---

[1] By Decision and Order dated March 7, 2012, Chief Judge Sharpe dismissed certain claims asserted in plaintiff's amended complaint (Dkt. No. 8), without prejudice. (Dkt. No. 9 at 11-12). Thereafter, plaintiff did not perfect a motion to amend his complaint further. (*See* 7/24/2014 Decision and Order at 5, Dkt. No. 91).

28, 2008; (c) a claim that defendants including Fischer, Woods,[2] Haug, and Gettman, violated plaintiff's rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by denying plaintiff Kosher meals for several days, starting on February 29, 2008; (d) a claim that defendants Raymonda and Labarge retaliated against plaintiff because of his prior litigation, by harassing him and tampering with his legal papers in March 2008; (e) a claim that defendant Raymonda subjected plaintiff to an improper sexual search in March 2008; (f) claims that defendants Fischer, Woods, Haug, Caserto, and Buckley denied plaintiff a Kosher meal on or about April 9, 2008, and that defendants Buckley and Caserto retaliated against plaintiff on that date because of his complaints about violations of his religious rights; (g) Eighth Amendment excessive force, failure-to-intervene, and failure-to-protect claims against defendants Tulip, Cosset, Hyde, Bellnier, Sheahan, Isabella, and Kemp arising from an alleged April 16, 2009 assault of plaintiff; and (h) excessive force and/or failure-to-intervene claims against defendants Tulip, Ramsdell,

---

[2] Robert K. Woods, the former Superintendent of Upstate was named as defendant "Woods" in this action and accepted service. The amended complaint names another defendant named R.K. Woods, who was described as a Correction Officer at Upstate involved in denying plaintiff Kosher meals in February 2008; but he was never served. (Def.s' Mem. of Law at 2-3, Dkt. No. 87-2; Am. Compl., Dkt. No. 8 at 7, 8, 19). The amended complaint also names John and Jane Does as defendants with respect to the February 2008 denial of kosher meals to plaintiff. These defendants were never identified by name or served, as plaintiff was directed to do by Chief Judge Sharpe in his March 7, 2012 Decision and Order (at 12, Dkt. No. 9). This action should be dismissed as against defendant R.K. Woods and the Doe defendants. *See, e.g., Gillard v. Burge*, 9:03-CV-1537 (TJM/RFT), 2007 WL 1074789, at *1, 10 (N.D.N.Y. Apr. 5, 2007) (citing Fed. R. Civ. P. 4(m) & Local Rules N.D.N.Y. 4.1(b)) (dismissing Doe defendants who were never identified or served); *Smith v. Graziano*, 9:08-CV-469 (GLS/RFT), 2010 WL 1330019, at *6 (N.D.N.Y. Mar. 16, 2010); *Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998).

3

Bushey, and Hungerford arising from an alleged June 29, 2009 assault of plaintiff. (3/27/12 Decision and Order at 11-12, Dkt. No. 9; Def.s' Mem. of Law at 1-2, Dkt. No. 87-2 (citing Am. Compl., Dkt. No. 8); Tr. of Pl.'s 4/11/2014 Dep. at 30-31, Dkt. No. 87-3). The facts related to these particular claims will be discussed below, to the extent necessary to address the issues raised by the summary judgment motion.

## DISCUSSION

I. **Plaintiff's Motion to Dismiss Claims Without Prejudice**

    A. **Applicable Law**[3]

Where, as in this case, an answer and a motion for summary judgment have been served on the plaintiff, and the parties have not signed a stipulation of dismissal, plaintiff may not voluntarily dismiss claims without court order. *See* Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."). "A trial court has great discretion in considering whether to grant a motion for voluntary dismissal under the rule." *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 304 (S.D.N.Y. 2012) (citing, *inter alia*, *D'Alto v. Dahon California Inc.*, 100 F.3d 281, 283 (2d Cir. 1996)).

The Second Circuit has recognized that "[t]wo lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (citation omitted). The

---

[3] This discussion of the applicable law draws heavily on U.S. District Judge Mauskopf's decision in *Emory v. New York*, No. 11-CV-1774, 2013 WL 1881009, at *2 (E.D.N.Y. May 6, 2013).

first line indicates that dismissal without prejudice would be improper if the defendant would suffer some "plain legal prejudice other than the mere prospect of a second lawsuit," and the second line indicates that the test for dismissal without prejudice "involves consideration of various factors, known as the *Zagano* factors." *Id.* The *Zagano* factors include: "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *Id.* (citing, *inter alia, Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)). "These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." *Kwan*, 634 F.3d at 230.

## B. Analysis

Consideration of the applicable factors weighs heavily in favor of denying plaintiff's motion for voluntary dismissal of certain of his claims without prejudice. These claims have been pending since 2011, and defendants filed a summary judgment motion, fully supported by numerous affidavits and exhibits, to dismiss these claims with prejudice, in June 2014. Plaintiff provides no justification for withdrawing these claims without prejudice, other than by stating that he now wishes "to simply focus on my excessive force [and] failure to protect claims." (Pl.'s Aff. in Support of Motion ¶ 2, Dkt. No. 102-1 at 1). At this late stage of the proceedings, it would be unfair and unduly prejudicial to the defendants to allow plaintiff to withdraw

certain claims while reserving the right to re-file them at a later time, thereby forcing the defendants to start over in defending against claims they have opposed over more than three years of litigation in this action. *See, e.g.*, *Emory v. New York*, No. 11-CV-1774, 2013 WL 1881009, at *3 (E.D.N.Y. May 6, 2013) (denying plaintiffs' motion to dismiss action without prejudice where plaintiffs failed to proffer reasons why their "voluntary" dismissal came so late in the litigation, and only after the defendants marshaled strong arguments in favor of dismissal in substantive motions, both because it reflects plaintiffs' lack of diligence and because it may subject defendants to the burden of relitigating these same claims); *Krivchenko v. Clintondale Aviation, Inc.*, No. 1:13-CV-820 (TJM), 2014 WL 4684808, at *4 (N.D.N.Y. Sept. 18, 2014) (denying voluntary motion to dismiss action, filed without adequate explanation after defendant filed a motion for summary judgment motion, because it indicates an "an undue vexatiousness" and could potentially subject the defendants to the burden of unnecessary relitigation). In any event, because the claims that plaintiff seeks to dismiss relate to events in 2008, any effort to re-assert these claims in a new action would be barred by the three-year statute of limitations applicable to civil rights cases in New York.[4]

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of

---

[4] Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).

material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## III. Exhaustion of Administrative Remedies

Defendants contend that plaintiff did not exhaust his administrative remedies because he failed to pursue grievances relating to the surviving claims in this action,

except as to the Eighth Amendment claims arising from the alleged April 16, 2009 assault. In his responsive papers, plaintiff alleges, in detail, how his concerted efforts to pursue a grievance with respect to the alleged June 29, 2009 assault were thwarted by certain defendants and others at DOCCS. Plaintiff offers no evidence that he actually submitted grievances with respect to any of the other claims remaining in this action, other than conclusory allegations that many grievances he submitted at Upstate were not processed by DOCCS.

The court concludes that there are disputed factual issues with respect to whether plaintiff exhausted his administrative remedies as to his Eighth Amendment excessive force and failure-to-intervene/protect claims, which may not be resolved on summary judgment. However, no reasonable fact finder could conclude that the plaintiff filed grievances relating to his other remaining claims; accordingly this court recommends that those claims be dismissed for failure to exhaust administrative remedies.[5]

## A.    Applicable Law

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the

---

[5] Defendants also argue that plaintiff's remaining claims of retaliation, denial of Kosher meals, and improper sexual searches in 2008 should be dismissed on the merits. (Def.s' Mem. of Law at 7-22). Given the court's conclusion that plaintiff failed to exhaust his administrative remedies with respect to these claims, the court will not address defendants' arguments on the merits.

subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court held that, in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the superintendent of the relevant facility. *Id*. § 701.5(c). Adverse decisions at the superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes

that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano*, it also decided four related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[6]  Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686).  The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*  Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford*, has been a matter of some speculation.[7]  Although the Second Circuit has

---

[6] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special  circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

[7] See, e.g., *Newman v. Duncan*, 04-CV-395 (TJM/DRH), 2007 WL 2847304, at * 2 n. 4 (N.D.N.Y. Sept. 26, 2007); *Shariff v. Coombe*, 655 F. Supp. 2d 274, 285-86 n.7 (S.D.N.Y. 2009).

not explicitly held that *Hemphill* remains good law, it has applied the three-part inquiry in post-*Woodford* cases. *See, e.g.*, *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009).

### B. Analysis

Brandi Collyer, the Inmate Grievance Program ("IGP") Supervisor at Upstate, submitted a sworn declaration stating that she searched the IGP files and found no evidence that plaintiff ever filed a grievance at Upstate with respect to the remaining claims in his complaint, other than the claim relating to the alleged assault of plaintiff on April 16, 2009. (Collyer Decl. & Ex. A, Dkt. No. 87-4). Jeffrey Hale, the DOCCS Assistant Director for the IGP and the custodian of records for the CORC, determined that there was no record indicating that plaintiff appealed the denial of any grievance relating to the remaining claims in his amended complaint, except as to the alleged April 16, 2009 assault.[8] (Hale Decl. ¶¶ 1-14 & Ex. A, Dkt. No. 87-10). Ass't Dir. Hale noted that plaintiff has been a prolific author of grievances during his incarceration at DOCCS and has appealed 71 grievances from Upstate to the CORC between 2010 and 2013. (Hale Decl. ¶¶ 15-16).

In his response to defendants' summary judgment motion, plaintiff denied the allegations that he failed to pursue grievances with respect to the remaining claims in the amended complaint, referencing a supporting affidavit. (Pl.'s Resp. to Def.s' Stmt. Pursuant to Rule 7.1(a)(3) ¶¶ 9, 13, Dkt. No. 102-3 at 2). In the affidavit (as well as in his amended complaint), plaintiff claimed, generally, that he submitted many

---

[8] Ms. Collyer and Mr. Hale are not named as defendants in this action.

grievances and appeals at Upstate that were never filed or processed by the IGP, the Superintendent, and/or the CORC. (Pl.'s Aff. in Opp'n to Mot. ¶¶ 22, 30-31, Dkt. No. 102-2; Am. Compl., Dkt. No. 8 at 17).

Plaintiff made specific factual allegations that various defendants, and others at DOCCS, stymied his efforts to pursue a grievance at Upstate, but only with respect to his claims relating to the alleged June 29, 2009 assault. (Pl.'s Aff. in Opp'n to Mot. ¶¶ 14, 16-28, 30; Pl.'s Mem. of Law at 9, 12-17, Dkt. No. 102-4).[9] During his April 11, 2014 deposition, plaintiff was asked about whether he pursued a grievance with respect to the alleged retaliation against him on March 3, 2008. After first claiming that he "filed a grievance on everything, but they don't file all my grievances," (Pl.'s Dep. at 81), plaintiff later acknowledged that he was not sure and did not have a specific recollection as to whether he pursued a grievance with respect to the March 3, 2008 incident (Pl.'s Dep. at 82-85).[10] Plaintiff has not produced copies of any grievances related to the June 29, 2009 assault or the other remaining claims in his

---

[9] Plaintiff alleged, *inter alia*, that (1) several of the defendants involved in the June 29, 2009 assault told him that they would "make sure your grievance doesn't go through" and made fun of his efforts to file grievances; (2) he attempted to submit grievances with respect to the assault on June 29th and again on July 16th, but he never received an acknowledgment of filing or a reply; (3) plaintiff arranged for his mother and his attorney to mail in copies of the grievances that he had tried to submit, but the IGP would not accept grievances from them; (4) when he received no acknowledgment of his grievances, he submitted an appeal to the Superintendent (on July 29th), and then to the CORC (on August 31st); (5) he also filed numerous letters to complain about DOCCS failure to process his grievance and appeals with respect to this incident, one of which was answered by Supt. Bellnier on August 10, 2009, who (falsely) stated that all of plaintiff's grievances and appeals were being filed. (*Id.*)

[10] During the deposition, plaintiff was not asked about whether he filed grievances with respect to other incidents. The deposition was not completed, and the court later denied defendants' belated letter motion to extend the discovery deadline to complete the deposition. (Pl.'s Dep. at 118; 5/21/2014 Text Order, Dkt. No. 83).

amended complaint; he claims that his copies of various legal documents have been seized from him or discarded as the result of illegal cell searches. (Pl.'s Dep. at 81-82; Am. Compl., Dkt. No. 8 at 18-19, 21).

"Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, No. 9:09-CV-67 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) (Rep't-Rec.), *adopted*, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010) (*citing, inter alia, Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (plaintiff's allegations that his grievances were misplaced or destroyed by corrections officers ultimately does not relieve him of the requirement to appeal those claims to the next level once it becomes clear that no response is forthcoming)); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281-82 n.8 (N.D.N.Y. 2013) (collecting cases). *Cf. Johnson v. Tedford*, 616 F. Supp. 2d 321, 326 (N.D.N.Y. 2007) (Sharpe, J.) ("in light of the Second Circuit's *Hemphill* decision, several Southern District [of New York] cases have recognized that when a prisoner asserts a grievance to which there is no response, and it is not recorded or assigned a grievance number, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review").

Plaintiff has made detailed factual allegations about how his concerted efforts to perfect a grievance with respect to the June 29, 2009 assault were thwarted by some of the defendants, and others in DOCCS. He asserts that he unsuccessfully tried to file not only a grievance, but an appeal to the Superintendent, and an appeal to the CORC

when he received no responses at the earlier stages of the grievance process.  He also

claims that he received a specific response from defendant Bellnier regarding one

complaint about this grievance.  Plaintiff has provided no documents supporting his

claims, and a fact finder may ultimately find his allegations incredible.  However,

viewing the evidence in a light most favorable to the plaintiff, I conclude plaintiff has

raised an issue of material fact as to whether the grievance process was not practically

available to him with respect to the June 29, 2009 assault, or whether "special

circumstances" justified a failure to perfect a grievance with respect to that incident.

See, e.g, *Johnson v. Tedford*, 616 F. Supp. 2d at 326 (while the court would normally

be hesitant to afford weight to plaintiff's assertions that his grievance was never

assigned a number or responded to, there is some evidence to support his position in

the form of inquiry letters and official responses regarding the grievance at issue;

viewing the evidence in the light most favorable to the plaintiff, the court cannot

determine whether he had administrative remedies available under the procedure

established by DOCS at the time of the alleged grievance ).

However, plaintiff has made only conclusory and inconsistent allegations to

rebut the evidence offered by the defendants that he did not file grievances or appeals

with respect to the remaining claims in his amended complaint, other than those

involving the April and June 2009 alleged assaults.  With respect to the claims other

than the assault claims, no rational fact finder could conclude that plaintiff exhausted

his administrative remedies.  Accordingly, the court recommends dismissal of (a) the

February 8, 2008 retaliation claim against defendants Napoli and Sheahan; (b) the

February 28, 2008 retaliation claim against defendant White; (c) the claims against defendants Fischer, Woods, Haug, and Gettman relating to the denial of plaintiff's Kosher meals starting on February 29, 2008; (d) the March 2008 retaliation claim against defendants Raymonda and Labarge; (e) the claim that defendant Raymonda subjected plaintiff to an improper sexual search in March 2008; and (f) the claims against defendants Fischer, Woods, Haug, Caserto, and Buckley relating to the denial of plaintiff's Kosher meal, and related retaliation, on or about April 9, 2008. Because plaintiff could not, at this late date, exhaust his administrative remedies with respect to these 2008 claims, I recommend that they be dismissed with prejudice.[11]

## IV. Eighth Amendment Excessive Force and Related Claims

The amended complaint alleges that plaintiff was assaulted on April 16, 2009, by defendants Stanley Tulip and Cosset, and that defendant C.O. Hyde "had a chance to stop it but didn't." (Dkt. No. 8 at 11). Plaintiff also claims that, prior to the April 16 incident, he informed defendants Bellnier, Sheahan, Isabella, and Kemp that he had been threatened by Tulip, but they "failed to take reasonable steps to stop" the assault. (*Id.*). Finally, plaintiff alleges that he was assaulted on June 29, 2009, by defendants Tulip, Craig Ramsdell, and C.O. Bushey, and that defendant William Hungerford

---

[11] Under applicable regulations, an inmate must file a formal grievance within 21 days of an alleged occurrence. An inmate may make a request for additional time, which may be granted in the discretion of the IGP supervisor upon a showing of mitigating circumstances, but only if the request is made within 45 days of the occurrence. *See* N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.5(a) ("[a]n inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence"), 701.6(g)(1)(b) ("[t]he IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances[;] . . . [a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence).

permitted the assault to occur. (*Id.*)

Defendants have moved for summary judgment with respect to the April 16, 2009 incident, arguing that no rational fact finder could conclude that any force was used against plaintiff by the defendants on that date. The defendants have submitted numerous declarations stating that no force was threatened or used against plaintiff on April 16th. However, plaintiff's allegations of an "assault" "without provocation and while [he] was incapacitated by restraints," (Dkt. No. 8 at 11), as supplemented by plaintiff's motion papers, are sufficient, if barely so, to create an issue of fact and avoid summary judgment.

Defendants have not challenged plaintiff's claims relating to the June 29th assault on the merits, but relied solely on their unsuccessful argument that plaintiff failed to exhaust his administrative remedies with respect to this claim. Given that, and plaintiff's allegations of an assault on that date, as supplemented by the affidavit in opposition to the pending motion, this court recommends that summary judgment with respect to this excessive force claim also be denied.

A. **Applicable Law**

1. **Excessive Force**

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230

16

F.3d 14, 20 (2d Cir. 2000).  To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'"  *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries.  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Id*. at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Id*. (quoting *Hudson*, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:  the extent of the injury and the mental state of the defendant;

the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### 2. Failure to Intervene/Protect

A correction officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate. *See, e.g., Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. May 24, 2010)*; Cicio v. Graham,* No. 9:08-CV-534 (NAM/DEP), 2010 WL 980272, at *13 (N.D.N.Y. Mar. 15, 2010). A law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated by other officers in his or her presence. *Cicio v. Graham,* 2010 WL 980272, at *13.[12] In order to establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Tafari v. McCarthy*, 714 F. Supp. 2d at 342*; Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

---

[12] *See also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be."); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence").

In order to establish an Eighth Amendment claim for failure to protect, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, **and** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). An inmates' expressed fear of being assaulted by others is not by itself adequate to support a failure to protect claim, absent supporting evidence of prior assaults or threats against the inmate. *See, e.g.*, *Fofana v. Suffolk County Correctional Facility*, No. 13-CV-443, 2013 WL 2285753, at *5 (E.D.N.Y. May 20, 2013) (plaintiff's assertion that he feared for his life, in the absence of allegations that he was previously assaulted or even threatened, does not support a reasonable inference that plaintiff was incarcerated under conditions posing a substantial risk of serious harm) (*citing, inter alia*, *Best v. City of New York*, No. 11 Civ. 4475, 2012 WL 5458054, at * 7 (S.D.N.Y. Nov. 8, 2012)).

## B. Analysis

### 1. Alleged April 16, 2009 Assault

Defendants Tulip, Crossett, and Hyde have submitted declarations stating that they used no physical force against plaintiff during their interaction with him on April 16th, and/or did not witness other officers doing so. (Tulip Decl., Dkt. No. 87-19;

Crossett Decl., Dkt. No. 87-14; Hyde Decl., Dkt. No. 87-9). Defendants Bellnier, Sheahan, and Isabella, made rounds of the infirmary with the Upstate executive team on April 16, 2009, shortly after plaintiff was admitted there, but did not recall plaintiff making any complaint that he was threatened by defendant Tulip or any other corrections officer. (Bellnier Decl. ¶¶ 9-10, Dkt. No. 87-12; Sheahan Decl. ¶¶ 18-19, Dkt. No. 87-18; Isabella Decl. ¶¶ 8-9 & Ex. A, Dkt. No. 87-16). Defendant Kemp, the Unit Chief of the Mental Health Unit at Upstate, stated that plaintiff did not advise him that plaintiff had been threatened by any corrections officer on April 16th or prior to that day. (Kemp Decl. ¶¶ 7-12, Dkt. No. 87-20). Defendants also submitted plaintiff's medical records from April 2009 and a supporting declaration, indicating that plaintiff declined medical treatment in the days following the alleged assault, and that he did complain of significant injuries or claim to be the victim of an assault. (Def.s' Mem. of Law at 24-26; Smith Decl. ¶¶ 9-23 & Ex. A, Dkt. No. 88-1).

The amended complaint alleges that, on April 16, 2009, plaintiff was "assaulted" by defendants Tulip and Crossett "without provocation and while I was incapacitated by restraints." (Dkt. No. 8 at 11). In his Affidavit in Opposition to [Summary Judgment] Motion (¶ 2), plaintiff elaborates on the alleged assault as follows: (1) he was "kicked on buttocks and back causing me severe pain and agony[,] worsening pre[-]existing injury to Hip (impingement) and back Herniated Disc. L4 L5"; (2) he was "punched [in the] back, causing severe pain"; (3) defendants Tulip and Crossett caused plaintiff further severe pain by "bending my arms to hurt my shoulders which I had pre[-]existing injury"; (3) the corrections officers "bent

plaintiff's hand/wrist causing severe pain esp[ecially] in [left] wrist that was broke[n] and never quite healed right" and refused to loosen plaintiff's handcuffs which were painfully tight; and (4) plaintiff was "painfully hit in testicles." (Dkt. No. 102-2 at 3). Plaintiff's affidavit also states that defendant Hyde "stood by and watched" during the assault. (*Id*.).

As framed by the details of the April 16th incident stated in plaintiff's affidavit in opposition to the summary judgment motion, the allegations, in the amended complaint, of an unprovoked "assault" by two correction officers, while plaintiff was confined in restraints, are adequate to support an Eighth Amendment claim for malicious use of excessive force. Plaintiff's claims obviously cannot be reconciled with the declarations submitted by the defendants, who deny any use of force or reported threat of force. However, in the context of a summary judgment motion, this court cannot resolve the stark credibility contest between the plaintiff and the defendants about the events of April 16, 2009.[13]

The medical records submitted by defendants provide no evidence that plaintiff

---

[13] The plaintiff notes that he was restricted in his ability to gather statements from other DOCCS inmates, whom he contends would corroborate the threats and assaults alleged in the amended complaint, and would document that plaintiff was denied requested medical care in the days following the alleged April 16, 2009 assault. (Pl.'s Aff. in Opp'n to Mot. ¶¶ 1, 4, 34). Because DOCCS had legitimate security concerns about allowing plaintiff to communicate with other inmates about alleged assaults by correction officers, and because corroborating statements to bolster the credibility of plaintiff's allegations were not necessary to establish a material issue of fact in response to a summary judgment motion, the court deferred such discovery until some or all of plaintiff's claims survived dispositive motions. At that time, the court would likely appoint pro bono counsel to represent plaintiff at trial; and counsel could then conduct appropriate investigation with respect to other potential inmate witnesses. (10/22/2013 Text Order, Dkt. No. 78; 7/24/2014 Decision and Order at 9, Dkt. No. 91).

presented with any serious injuries in the days following the alleged assault on April 16th. However, in his affidavit in opposition to the summary judgment motion (¶¶ 4-8), plaintiff alleges that he was denied requested medical attention for injuries resulting from the assault, by Nurse White and others, and that DOCCS medical personnel did not fully and accurately report his complaints in his medical records. (Dkt. No. 102-2 at 5-7).[14] The medical records indicate that plaintiff requested Flexeril and Tylenol at sick call on April 18th and 19th, which would provide some corroboration that he was suffering from the pain he alleged as a result of an assault on April 16th. While the DOCCS medical records may cast doubt on the credibility of plaintiff's claims about the alleged assault, the court cannot conclude that a rational fact finder would necessarily conclude that the medical records definitively negate plaintiff's allegations regarding the April 16th incident.[15]

### 1. Alleged June 29, 2009 Assault

The amended complaint alleges that, on June 29, 2009, defendants Tulip, Ramsdell, and Bushy assaulted plaintiff without provocation while he was in handcuffs, while others, including defendant Hungerford, stood by and allowed the

---

[14] Plaintiff has never claimed that he suffered obvious or disfiguring injuries as a result of the April 16th incident, so the failure of DOCCS medical staff to observe that plaintiff had such injuries during sick call outs do not necessarily establish that he was not assaulted. As discussed above, proof of a serious injury is not necessary to establish an Eighth Amendment violation.

[15] *Cf. Benitez v. Pecenco*, 92 Civ. 7670, 1995 WL 444352, at n.5 (S.D.N.Y. July 27, 1995) (plaintiff's conclusory allegation that he was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue). In granting summary judgment against the plaintiff in *Benitez*, the court noted, *inter alia*, that the plaintiff in that case, unlike plaintiff Murray, did not allege that the medical records contradicting his claims were falsified.

assault to continue. (Dkt. No. 8 at 11). In his affidavit in opposition to the summary judgment motion (¶¶ 12-13), plaintiff alleges that defendant Tulip threatened plaintiff with "his stick" and then, with the help of the other defendants, pushed plaintiff into the wall, on which he hit his head; hit plaintiff in the testicles; and then took plaintiff to the "Boss chair" where the defendants knocked down, punched, kicked, twisted, and bent the plaintiff. Plaintiff has made sufficient allegations of fact to support his Eighth Amendment claims with respect to the June 29th incident. As noted above, defendants moved for summary judgment with respect to this claim based only on plaintiff's purported failure to exhaust administrative remedies, but did not challenge the claim on the merits or provide declarations from any of the defendants challenging the plaintiff's account of the June 29th "assault," even in their reply. Accordingly, and in light of this court's conclusion that there is a material issue of fact with respect to administrative exhaustion, I recommend that defendants' motion for summary judgment be denied with respect to this claim.

　　　**WHEREFORE**, based on the findings above, it is

　　　**RECOMMENDED**, that plaintiff's motion to dismiss certain of his remaining claims without prejudice (Dkt. No. 102) be **DENIED**, and it is

　　　**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 87) be **DENIED IN PART**, as to plaintiff's Eighth Amendment claims relating to the alleged assaults on April 16, 2009 and June 29, 2009, but otherwise be **GRANTED** on the grounds stated herein, and that plaintiff's other remaining claims in the amended

complaint be **DISMISSED**.[16]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


**Dated:  December 24, 2014**

Andrew T. Baxter

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

[16] If the District Court accepts this recommendation, all defendants **other than** Tulip, Cosset, Hyde, Kemp, Bellnier, Sheahan, Isabella, Ramsdell, Bushey, and Hungerford would be dismissed from the action.